UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CHRISTOPHER BEY #236321,

        Plaintiff,                        Case No. 2:07-cv-60

v.                                                 Honorable Robert Holmes Bell

T. LUOMA, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On August 30, 2007, this Court ordered service of Plaintiff's complaint on Defendants. On December 17, 2007, and December 28, 2007, Defendants filed motions for summary judgment (docket #45 and #49). Plaintiff filed responses (docket #58 and #59) and an affidavit (docket #62) on or about January 11, 2008, and May 12, 2008. Upon review, I recommend that Defendants' motions for summary judgment be granted.

**Applicable Standard**

        Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM

2

MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### Facts

Plaintiff is presently incarcerated at the Standish Maximum Correctional Facility. Plaintiff's *pro se* complaint concerns events which allegedly occurred while Plaintiff was incarcerated at the Baraga Maximum Correctional Facility (AMF). In Plaintiff's complaint, he sues Defendants Warden T. Luoma, Deputy Warden Darlene Edlund, Resident Unit Manager William Jondreau, Assistant Deputy Warden William Luetzow, Resident Unit Manager Daniel Lesatz, Case Manager Terry Arredia, Regional Prison Administrator James MacMeekin, MDOC Director Patricia Caruso, MDOC Deputy Director D. Straub, and D. Gerard.

Plaintiff alleges in his complaint that he has been improperly kept in administrative segregation and maintained on RPA (Regional Prison Administrator) detainer despite being misconduct free, in retaliation for filing grievances and lawsuits. Plaintiff alleges that on April 1, 2004, Resident Unit Manager Ordiway told him that if he remained misconduct free for 12 months, Defendant Leutzow would consider releasing him from administrative segregation. On April 14, 2005, Defendant Lesatz told Plaintiff that the reason he was still in administrative segregation was because of the all the grievances and lawsuits he had filed. Plaintiff alleges that Defendant Jondreau made a similar statement on August 15, 2005, while delivering legal mail. Plaintiff alleges that he has been misconduct free since March 28, 2004.

Plaintiff claims that his continuation in administrative segregation after being sentenced to "loss of privileges" for two major misconducts for "assaults-on-staff" on March 26,

2004, and March 27, 2004, constitutes double jeopardy. However, Plaintiff concedes that Defendant Luoma explained that his administrative segregation placement was the result of Plaintiff's extensive history of assaulting staff, threatening behavior and sexual misconduct, and was not retaliatory. Plaintiff also complains that he has been denied equal protection because other prisoners who have been misconduct free for 12 months have been released from administrative segregation, and that he has not received personal interviews regarding his classification, as other prisoners have. Finally, Plaintiff contends that the administrative segregation monthly review forms are outdated and that Plaintiff does not get a fair and proper hearing because persons other than housing unit staff do not conduct the reviews. Plaintiff seeks damages.

## Discussion

Defendants Caruso, Straub, and MacMeekin claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

4

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances

---

[1]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to any claims against Defendants Caruso, Straub, and MacMeekin, as well as with regard to some of his claims against Defendants Jondreau, Luoma, Edlund, and Luetzow. Defendants state that the grievances filed by Plaintiff which named Defendants Caruso, Straub, and MacMeekin were rejected as duplicative of several previously filed grievances. The fact that Plaintiff's grievance was "duplicative" implies that he previously filed a grievance on the issues raised. Moreover, Plaintiff appealed the rejection of this grievance to step III. Plaintiff is not required to take any further action. Therefore, the undersigned concludes that Defendants Caruso, Straub, and MacMeekin are not entitled to summary judgment for lack of exhaustion.

Defendants state that although Plaintiff filed a grievance regarding his claim against Defendant Jondreau for threatening future retaliation, it was rejected as untimely. In addition, Plaintiff's grievance against Defendants Luoma, Edlund and Luetzow alleging that they have a retaliatory policy of keeping prisoners in administrative segregation if they file grievances by charging them with false misconducts was rejected because it was vague and contained multiple issues. As noted above, in order to properly exhaust administrative remedies, prisoners must

complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 127 S. Ct. at 922-23; *Woodford*, 126 S. Ct. at 2386. Therefore, Plaintiff's failure to comply with the grievance policy on these issues entitles Defendants Jondreau, Luoma, Edlund and Luetzow to summary judgment on the threat of future retaliation and retaliatory administrative segregation policy claims.

Defendants also claim that Plaintiff's claims that he did not receive proper administrative segregation monthly reviews and that he was kept in administrative segregation longer than provided by policy does not state a claim. Defendants assert that pursuant to Policy Directive 04.05.120(III), Plaintiff cannot be released to the general population without approval of the Regional Prison Administrator because he was convicted of serious staff assaults, which occurred on March 26, 2004.

To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the Due Process Clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit repeatedly has found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (considering two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (involving inmate serving a life sentence who was placed in segregation after serving thirty days of detention for a misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th

Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding).

In *Jones*, the Sixth Circuit noted that the "atypical" length of the plaintiff's stay in administrative segregation was with good reason. *Id.* at 812. The court stated:

> First, he was placed in security control with all other transferred inmates. He then remained in administrative segregation for the duration of the investigation into the riots in which he played a significant role. At the conclusion of the investigation it was determined, after a hearing, that he had violated a prison rule by committing murder.
>
> It is not "atypical" for a prisoner to be in segregation while his or her participation in violent conduct inside the prison walls is investigated. While the length of time that plaintiff has been in segregation may be atypical, it was justified and does not lead to the conclusion that plaintiff suffered an "atypical and significant" hardship in relation to the ordinary incidents of prison life. When a prisoner is implicated in the killing of a prison guard during a large prison riot, it is not unreasonable for corrections officials to make some adjustment in the conditions of his or her imprisonment until a full and thorough investigation is completed.
>
> In addition, the record demonstrates that the conditions of plaintiff's confinement do not rise to an "atypical and significant" hardship. Plaintiff's stays in administrative segregation and security control were not much different than that experienced by other inmates in segregation.

*Id.* at 812-13.

In *Harden-Bey*, the Sixth Circuit observed that the holding in *Jones* was dependent on the facts of the case, which showed the "extraordinarily good reasons for holding plaintiff in segregation." *Id.* at 794 (*citing Jones*, 155 F.3d at 813). In *Harden-Bey*, the plaintiff was placed in administrative segregation indefinitely because he was rumored to be using his position as a ranking member of the Moorish Science Temple of America to direct and influence his followers to strong arm other prisoners, collect debts, and approve prisoner assaults. The plaintiff was also suspected

8

of being involved in planning a serious assault on staff. *Id.* at 791. In addition, the court noted that *Jones* involved a summary judgment decision, while the claims in *Harden-Bey* were the subject of a pleading stage dismissal. *Id.* at 794.

Although Plaintiff states that his placement in segregation has been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his segregation is that, at the time he filed his complaint, its duration has been for approximately three years. The Sixth Circuit has recognized that duration alone may, in extreme circumstances, cause administrative segregation to rise to the level of an "atypical and significant"deprivation that implicates a protected liberty interest. *See Harden-Bey v. Rutter*, 524 F.3d 789 (6th Cir. 2008) (holding that allegations that a prisoner has been indefinitely confined to administrative segregation for more than three years states a procedural due process claim). However, the facts in this case more closely resemble those in *Jones* than the facts in *Harden-Bey.* As in *Jones*, this issue is being decided at the summary judgment stage, rather than the initial pleading stage. In addition, Plaintiff was placed in administrative segregation as the result of two major misconduct convictions for "assaults-on-staff" on March 26, 2004, and March 27, 2004, rather than merely because he was suspected of using his influence on other prisoners. Plaintiff has not alleged that he was not guilty of the assaults on staff. Nor has Plaintiff alleged that the conditions under which he is being held constitute an atypical or significant hardship under *Sandin*. Plaintiff has no inherent constitutional right to rehabilitation, education, job assignments, or other programming. *See Rhodes v. Chapman*, 452 U.S. 337, 348, 101 S. Ct. 2392, 2400 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9 (1976); *Newsom v. Norris*, 888 F.2d 371, 374-75 (6th Cir. 1989); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980).

Consequently, the court concludes that no liberty interest is implicated by his placement. Therefore, in the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's due process claim.

Defendants also claim that they are entitled to summary judgment on Plaintiff's retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that his continued confinement in administrative segregation is the result of his protected conduct in filing grievances and lawsuits. Defendants deny that Plaintiff's use of the grievance system and/or his legal actions are the reason for his continued placement in administrative segregation. Defendants state that Plaintiff was reclassified to administrative segregation on November 14, 2003, at which time he had 165 major misconduct convictions. Since November 14, 2003, Plaintiff has been convicted of 22 additional misconducts, 14 of which were non-bondable. After the serious assaults on staff on March 26, 2004, Plaintiff avoided getting misconducts for approximately 18 months, after which he began getting misconduct tickets again. Defendants attach the affidavit of Defendant Edlund, as well as a copy of the March 26, 2004, critical incident report and misconduct summaries for December 27, 2003, through October 20,

10

2006. (*See* Defendants' Exhibit 4.) Defendants assert that based on the above, Plaintiff is being kept in administrative segregation for a legitimate reason and that Plaintiff's filing of grievances and lawsuits is neither a substantial or a motivating factor in the decision to continue Plaintiff in administrative segregation. In the opinion of the undersigned, Defendants have adequately shown that Plaintiff's continued incarceration in administrative segregation is not the resulted of retaliatory animus.

Defendants further state that confinement in administrative segregation does not violate the Eighth Amendment or the Double Jeopardy Clause of the Fifth Amendment. The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, Defendants are entitled to summary judgment on this claim.

The Double Jeopardy Clause of the Fifth Amendment provides in relevant part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794-95, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense, ... and then only when such occurs in successive

proceedings. *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 493 (1997). In *Hudson*, the Supreme Court stated that the proper test for determining whether a statutory scheme imposes punishment for double jeopardy purposes was: (1) legislature intent, and (2) whether the scheme resulted in a criminal penalty. *Id.* In this case, Plaintiff's confinement in administrative segregation is not a criminal punishment, but is merely a security classification imposed because of Plaintiff's behavior problems. Therefore, the undersigned recommends that Defendants be granted summary judgment on this claim.

Finally, Defendants claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

*Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). As noted above, Defendants have shown that there is no genuine issue of material fact that they violated Plaintiff's constitutional rights. Therefore, the undersigned recommends that they are entitled to qualified immunity.

### Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket #45 and #49) be granted and this case be dismissed in its entirety. Plaintiff's claims against Defendants Jondreau, Luoma, Edlund and Luetzow for threatening future retaliation and instituting retaliatory administrative segregation policy claims are properly dismissed without prejudice for failure to exhaust administrative remedies. Plaintiff's remaining claims are properly dismissed with prejudice for lack of merit.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 29, 2008

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).